EASTERN DISTRICT OF LOUISIANA

GLEN GUIDRY                                          CIVIL ACTION

V.                                                   NO. 16-4135

NOBLE DRILLING SERVICES INC,                         SECTION "F"
NOBLE DRILLING EXPLORATION
COMPANY AND NOBLE DRILLING
(U.S. LLC)

ORDER AND REASONS

Before the Court is the defendants' motion for summary judgment. For the following reasons, the motion is DENIED.

**Background**

This litigation arises out of a longshoreman's allegations that he suffered a disabling hip injury when he slipped on mud while performing a casing operation on a drill ship.

Glen Guidry was employed as a field service representative by VAM USA, LLC, a subcontractor of Shell. VAM performed casing operations aboard the Noble Bully 1, a drill ship located in the Gulf of Mexico, which was owned by Noble Drilling Services. The drilling operation involved lowering a casing, a large-diameter pipe, into the ocean floor. The casing is made up of casing joints, or long steel pipes, which are attached with threads on each end that join them together.[1] Guidry would walk from his computer to

---

[1] Casing Joint, Oilfield Glossary, SCHLUMBERGER, http://www.glossary.oilfield.slb.com/Terms/c/casing_joint.aspx (last visited April 3, 2018).

1

the drill floor where he would wipe off the threads of the casing joint and inspect the joint for abnormalities before the crew assembled it. As the driller operator ran the casing pipe down into the ocean floor, oily mud would overflow from the casing and accumulate at the base of the drilling floor.

On the early morning of May 11, 2015, Guidry was inspecting the joint casing while standing upon the drilling floor, which was covered in mud. Guidry slipped and allegedly sustained injuries to his back, ligaments, muscles, and nervous system. On May 4, 2016, he sued Noble Drilling Services, Inc, Noble Drilling Exploration Company, and Noble Drilling (U.S.), LLC, claiming that he was injured as a result of the defendant's negligence and seeking relief under general maritime law and the Longshoremen's and Harbor Workers' Compensation Act. It is undisputed that Guidry is not a Jones Act seaman. The defendants have moved for summary judgment.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine

dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

A.

To succeed in a negligence claim under general maritime law, "[t]he plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury." In re Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir. 1991). "It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959). Nonetheless,

the harm caused "must be reasonably foreseeable." In re Cooper, 929 F.2d at 1077.

B.

The defendants contend that nothing in the record creates a material fact issue and that the plaintiff has not submitted evidence that supports his claim that the defendants breached the duty owed to him. But the plaintiff has submitted testimony that undermines the defendants' arguments. The defendants contend that the plaintiff testified that he was aware that mud and water were a frequent occurrence in such operations and that the mud was a hazard present in this operation. Moreover, they point to testimony that the area was diligently cleaned during this project between every joint casing. They argue that the defendants cannot be held liable for Guidry's fall when Guidry was aware of the conditions and did not take steps to clean the mess. The plaintiff counters that while there was always slippery mud during these operations, the amount was excessive here. He testified that other operations cleaned the mud between every joint, where on the Noble Bully I, the Noble employees would clean between every two or three joints, allowing the mud to accumulate. Strong or weak, this is obviously a fact issue for trial.

The defendants also contend that Guidry stated on the record that VAM was in control of "all aspects of the [casing] operation." Because VAM was in control, it was responsible for the amount of

5

mud accumulating on the floor. But the plaintiff points to testimony by Christopher Broussard, Shell's Night Drilling Supervisor, that the driller "is in charge of the casing operation as it is progressing." In contrast with his own testimony, the plaintiff contends that based on Broussard's testimony, Noble was in charge, or at least shares responsibility, for the casing operation. Further, the plaintiff points to his own testimony that the driller's speed determines the amount of mud that would accumulate on the rig floor; the faster he drilled, the more mud would build up. Additionally, Kyle Randall, a Noble floor hand, stated that it was their responsibility to manage the cleaning operations. Because Guidry wasn't in control of the amount of mud or the cleaning of it, he argues, Noble is not immunized from liability.

These issues demonstrate that a genuine dispute of fact exists regarding whether the defendants breached their duty of reasonable care. Both the plaintiff and the defendants have submitted competent and conflicting evidence of whether Noble or VAM was in control of the casing operation and ultimately responsible for keeping the area clean. Further, the parties have submitted conflicting evidence of whether Noble actually did keep the drill floor clean immediately before Guidry's fall. The defendants contend that because other witnesses testified that Noble employees diligently cleaned the area between every joint casing,

Guidry's testimony is "simply incorrect." The Court is unwilling to determine the credibility of the witnesses at this stage.[2] The conflicting testimony of a core issue in this case—the cleanliness of the drill floor and the defendants' diligence in maintaining its cleanliness to a reasonable degree—creates a genuine dispute of a material fact.

III.

A.

"As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." Scindia Stream Navigation Co., Ltd. V. De Los Santos, 451 U.S. 156, 170 (1981); see Manuel v. Cameron Offshore Boats, Inc., 103 F.3d 31, 33 n.6 (5th Cir. 1997)(noting that Fifth Circuit jurisprudence generally extends the rights and obligations of stevedores to independent contractors in this context). However, Section 905 of the Longshoremen's and Harbor Workers' Compensation

---

[2] The defendants also argued that Guidry's statements about the Noble employees cleaning less regularly should not be considered because he used imprecise language to describe the conduct, no one else reported hazards to Noble, and Guidry had not provided further evidence of Noble's negligence. The Court declines Noble's invitation to determine the credibility of Guidry's testimony or to weigh its probative value in comparison to other evidence presented. Whether Noble used reasonable care to keep the drill area clean is a central issue in this case, and Guidry's testimony creates an issue of fact that is critical to determining that issue.

Act allows a longshoreman to recover from a vessel owner for injuries caused by its negligence in limited circumstances. 33 U.S.C. § 905(b); Scindia, 451 U.S. at 161. "Under section 905(b) a vessel owner owes three specific legal duties to independent contractors working on the vessel: (1) the turnover duty,[3] (2) the duty to protect against hazards arising in areas or equipment under the vessel's active control, and (3) the duty to intervene when the vessel owner knows of a serious hazard and the stevedore improvidently decides to ignore that risk." Cameron Offshore, 103 F.3d at 33.

The plaintiff contends that the defendants breached the control duty. This duty obligates the vessel owners to "exercise reasonable care to prevent injures to independent contractors in areas that remain under the active control of the vessel." Id. at 34 (quoting Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 98 (1994)). In determining whether an area is under the active control of the vessel, the Fifth Circuit has considered "whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work." Dow v. Oldendorff Carriers GMBH & Co., 387 Fed. Appx. 504, 507 (5th Cir. 2010)(unpublished). Courts look to whether

---

[3] The turnover duty refers to the conditions of the ship and its equipment. Cameron Offshore, 103 F.3d at 33-34.

8

any vessel employees were in the area during the injury, and to what extent they were exercising control over the operation. See Richard v. Transocean Drilling, No. 03-92, 2004 WL 602780, at *4 (E.D. La. Mar. 23, 2004)(unpublished). On the other hand, if the independent contractor, and not the vessel owner, is "in control of the casing operation at the time of the injury . . . the [shipowner] cannot be liable for breaching the active control duty." Hewitt v. Noble Drilling US, LLC, No. 15-1197, 2016 WL 2820504, at *3 (E.D. La. May 13, 2016).

B.

A genuine dispute of fact exists regarding to what extent the defendants had active control over the casing operation and the area where it took place.[4] The defendants point to testimony discussed above that VAM was in charge of the casing operation. However, Christopher Broussard testified that the Noble driller was "in charge of the casing operating as it is progressing." And Gregory Randall, a Noble floor hand, testified that "as far as the cleaning operations, that was our baby and we had to take care of it." He also testified that although everyone had the responsibility to tell them that it was time to clean if they

---

[4] A vessel owner is only liable under Section 905 if it acted negligently. As discussed in Section II, there is a genuine dispute as to the facts pertaining to the defendants' negligence. But the plaintiff cannot succeed on this claim if it does not also prove that the defendants had active control.

9

noticed a dangerous situation, it was the Noble employees, and not VAM employees, that were actually responsible for cleaning. Moreover, at the time of the accident, Guidry testified that there were four Noble employees on the rig floor, plus an assistant rig manager, an assistant driller, and the driller positioned in the driller shack. The conflicting record testimony goes directly to whether Noble had active control of the area and operation where Guidry was injured. Because there is a genuine dispute as to material facts underlying a determination of whether Noble breached its duty and was in control of the area, summary judgment as to Guidry's claim under section 905 is highly inappropriate.

Accordingly, it is ORDERED: that the defendants' motion for summary judgement is DENIED.

New Orleans, Louisiana, April 4, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE