EASTERN DISTRICT OF LOUISIANA

GLEN GUIDRY                                                CIVIL ACTION

V.                                                         NO. 16-4135

NOBLE DRILLING SERVICES INC,                               SECTION "F"
NOBLE DRILLING EXPLORATION
COMPANY AND NOBLE DRILLING
(U.S. LLC)

## ORDER AND REASONS

Before the Court are joint motions for summary judgment against the intervenor. For the following reasons, the motions are DENIED.

**Background**

This litigation arises out of a longshoreman's allegations that he suffered a disabling hip injury when he slipped on mud while performing a casing operation on a drill ship.

Glen Guidry was employed as a field service representative by VAM USA, LLC, a subcontractor of Shell. VAM performed casing operations aboard the Noble Bully 1, a drill ship located in the Gulf of Mexico, which was owned by Noble Drilling Services. The drilling operation involved lowering a casing, a large-diameter pipe, into the ocean floor. The casing is made up of casing joints, or long steel pipes, which are attached with threads on each end

that join them together.[1] Guidry would walk from his computer to the drill floor where he would wipe off the threads of the casing joint and inspect the joint for abnormalities before the crew assembled it. As the driller operator ran the casing pipe down into the ocean floor, oily mud would overflow from the casing and accumulate at the base of the drilling floor.

On the early morning of May 11, 2015, Guidry was inspecting the joint casing while standing upon the drilling floor, which was covered in mud. Guidry slipped and allegedly sustained injuries to his back, ligaments, muscles, and nervous system. On May 4, 2016, he sued Noble Drilling Services, Inc, Noble Drilling Exploration Company, and Noble Drilling (U.S.), LLC, claiming that he was injured as a result of the defendant's negligence and seeking relief under general maritime law and the Longshoremen's and Harbor Workers' Compensation Act. It is undisputed that Guidry is not a Jones Act seaman. Liberty Insurance Corporation was the Longshore and Harbor Workers' Compensation insurer for the plaintiff's employer, VAM. Liberty has paid compensation, indemnity and medical payment to Guidry. Liberty entered the lawsuit as an intervenor on September 25, 2017, seeking repayment for the roughly $260,000 paid to Guidry in indemnity benefits and medical payments.

---

[1] Casing Joint, Oilfield Glossary, SCHLUMBERGER, http://www.glossary.oilfield.slb.com/Terms/c/casing_joint.aspx (last visited April 3, 2018).

The defendants moved for summary judgment on March 5, 2018, which the Court denied in its April 4, 2018 Order and Reasons. On April 9, 2018, Guidry and the Noble interests both filed motions for summary judgment against Liberty. On May 3, 2018, Guidry and the Noble interests sought leave to file an amended answer to Liberty's intervention to include an affirmative defense that was raised in the motions for summary judgment. The Magistrate Judge granted leave on July 3, 2018.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling &

3

Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual

controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

Guidry and the Noble defendants each move to dismiss Liberty Insurance, the intervenor. Their nearly identical motions seek dismissal on the ground that Liberty waived its right to subrogation. It is undisputed that Liberty issued a workers' compensation insurance policy to VAM. The insurance policy states, "We have a right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the schedule." Under the heading entitled "Schedule," it states, "Where required by contract or written agreement prior to loss and allowed by law." Separately, VAM and Shell executed a contract that provided that "All CONTRACTOR's insurances shall be endorsed to provide that underwriters waive any rights of recourse, including in particular, subrogation rights against OTHER CONTRACTOR GROUP to the extent of the obligations assumed by CONTRACTOR herein."[2] VAM is the CONTRACTOR. It is undisputed that read together, Liberty has agreed to waive its subrogation rights against "OTHER

---

[2] The agreement also provides that where a right is conferred on a third party, the third party can enforce it.

5

CONTRACTOR GROUP." However, the unavoidable dispute is whether Guidry and the Noble defendants fall under the definition of "OTHER CONTRACTOR GROUP" and therefore, if Liberty has agreed to waive its subrogation rights against them. Also, Liberty points out that the contract states that the waiver against the OTHER CONTRACTOR GROUP is only "to the extent of the obligations assumed by [VAM] herein." Guidry and the Noble defendants do not contest that this language is a part of the contract, but do not address its meaning or implication. Liberty contends that its waiver is subject to the obligations assumed by VAM. It further contends that VAM did not assume any obligations under the terms of the contract, and the movants have not pointed to any other evidence that VAM assumed any obligations. The Court will consider Guidry's and the Noble defendants' claims that Liberty waived its right to subrogation separately.

A.

Guidry's basis for claiming that Liberty waived its subrogation rights is that he is an "OTHER CONTRACTOR GROUP." To the extent Liberty waives subrogation to ""OTHER CONTRACTOR GROUP" under the governing contracts, the plaintiff is not included in that waiver because he does not fit within the definition of "OTHER CONTRACTOR."

The contract defines "OTHER CONTRACTOR GROUP" in Article 1, Section IIA as "OTHER CONTRACTOR and its AFFILIATES, its

subcontractors (of any tier) and their AFFILIATES, its and their respective directors, officers and employees (including agency personnel), **but shall not include any member of COMPANY GROUP or CONTRACTOR GROUP.**" (Emphasis added.) The contract defines "OTHER CONTRACTOR" as "any PERSON having entered into any contract or agreement with COMPANY to perform any work or services as to WORKSITE but **shall not include any member of COMPANY GROUP or CONTRACTOR GROUP**." (Emphasis added). COMPANY refers to Shell. Contractor Group is defined as "CONTRACTOR and its AFFILIATES, its SUBCONTRACTORS and their AFFILIATES, its and their respective directors, officers, and **employees** . . . ." (Emphasis added). In other words, CONTRACTOR GROUP includes VAM and its affiliates and subcontractors' directors, officers, and employees. Because Guidry is an employee of VAM, he is included in the definition of CONTRACTOR GROUP. The definitions of OTHER CONTRACTOR GROUP and OTHER CONTRACTOR explicitly state that any member of CONTRACTOR GROUP, which includes Guidry, is *not* considered a member of the OTHER CONTRACTOR GROUP. Therefore, Guidry is not an OTHER CONTRACTOR GROUP. The provision Guidry relies on in seeking waiver of Liberty's claims for subrogation does not apply to him.

B.

Unlike Guidry, the Noble defendants are OTHER CONTRACTORS because they have entered into a contract or agreement with Shell to perform work or services, and are not members of either Shell

7

or VAM. However, the contract provides that Liberty will wave subrogation rights against other contractors, such as the Noble interests, "to the extent of the obligations assumed by [VAM] herein." The Noble defendants have failed to show that VAM assumed any obligation in regards to subrogation rights towards other contractors.

In Section 22.1 of Article 22 of the contract, Shell and VAM agree to "save, indemnify, defend and hold harmless" each other "from against all claims, losses, damages, costs (including legal costs), expenses and liabilities" in regards to loss or damage to property and personal injury of any employee of either VAM or Shell. The contract does not state that VAM indemnifies, holds harmless, or cover any costs for other contractors. Noble does not provide any provision in which VAM agreed to assume obligations towards other contractors or otherwise address this provision, even though Liberty raised and briefed this issue in their opposition.[3] Further, the Noble defendants do not provide any alternative meaning of the clause conditioning Liberty's waiver on VAM assuming obligations that would permit the Court to find that the wavier is effective despite no contractual provisions assuming obligations. Without any evidence to the contrary, the Court must assume that the clause restricting the wavier to the extent that

---

[3] Guidry also fails to address this issue, and offers no explanation as to whether VAM assumed any obligations towards him.

8

VAM assumed obligations has meaning, and cannot simply be ignored. Because Noble has failed to address the issue and provide evidence to show that all of the explicit terms of the contract have been satisfied, it is not entitled to summary judgment.

Accordingly, the motions for summary judgment by the plaintiff and the defendants seeking to dismiss the intervenor's claims are DENIED.

New Orleans, Louisiana, August 28, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE